IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


TODD DAVIS,                        )
                                  )
              Plaintiff            )
                                  )    Civil Action No. 05-1558
        vs.                        )    Judge Arthur J. Schwab/
                                  )    Magistrate Judge
THE COMMONWEALTH OF PENNSYLVANIA,  )      Amy Reynolds Hay
DEPARTMENT OF CORRECTIONS, Dr.     )
JEFFREY BEARD, Secretary,          )
Department of Corrections, STATE   )
CORRECTIONAL INSTITUTE OF CHESTER, )
MARTIN L. DRAGOVICH, Super-        )
intendent, State Correctional      )
Institute of Chester, OFFICER      )
TERRA, State Correctional Institute)
of Chester, DR. BENJAMIN ROBINSON, )
Medical Doctor, State Correctional )
Institute of Chester, and PRISON   )
HEALTH SERVICES, INC., a Delaware  )
Corporation,                       )
                                  )
              Defendants           )
                                  )
                                  )    Re: Doc. No. 26

REPORT AND RECOMMENDATION

I.  RECOMMENDATION

    It is respectfully recommended that the motion to dismiss

(Doc. 26) be granted in part and denied in part.  It should be

granted as to all claims against the Department of Corrections

and SCI-Chester and as well to all official capacity claims

against Defendants Beard, Dragovich and Terra, but as to any

individual capacity claims against Defendants Beard, Dragovich

and Terra, it should be denied.  It also should be granted as to

Plaintiff's denial of access to courts claim contained in Count

IV and Plaintiff's substantive due process claim contained in
Count V of the Amended Complaint.  In all other respects it
should be denied.  Furthermore, pursuant to the Court's inherent
power, it is recommended that Count IV's denial of access to
courts claim and Count V's substantive due process claims be
dismissed sua sponte against Defendants Dr. Van Robinson and PHS,
Inc.[1]

II.  <u>REPORT</u>

Todd Davis ("Plaintiff"), proceeding with privately retained
counsel, has filed this civil rights complaint pursuant to 42
U.S.C. § 1983, along with state law claims pursuant to this
court's supplemental jurisdiction.  During the time relevant to
the complaint, Plaintiff was a prisoner in the State Correctional
Institution at Chester ("SCI-Chester").  After filing an original

---

[1]  It is true that Defendants PHS, Inc., and Dr. Van Robinson,
did not file a motion to dismiss.  Nevertheless, this court has the
power to sua sponte dismiss claims for failure to state a claim under
Fed.R.Civ.P. 12(b)(6), so long as Plaintiff receives notice and an
opportunity to be heard.  <u>See</u>, <u>e.g.</u>, <u>Roman v. Jeffes</u>, 904 F.2d 192,
196 (3d Cir. 1990)("there are times when a court may sua sponte raise
the issue of the deficiency of a pleading under Rule 12(b)(6) provided
that the litigant has the opportunity to address the issue either
orally or in writing."); <u>Bryson v. Brand Insulations, Inc.</u>, 621 F.2d
556, 559 (3d Cir. 1980).  Plaintiff has already had notice and
opportunity to respond to the DOC defendants' motion and we are
essentially recommending dismissal of PHS and Dr. Van Robinson based
on the same arguments raised by the DOC Defendants.  In addition, this
report and recommendation provides additional notice to the Plaintiff,
and the opportunity to file objections provides an additional
opportunity to be heard.  <u>Magouirk v. Phillips</u>, 144 F.3d 348, 359 (5th
Cir. 1998); <u>Canady v. Baker</u>, 142 F.3d 432 (Table), 1998 WL 123996, *1
(6th Cir. 1998); <u>Witzke v. Carlson</u>, 19 F.3d 1438 (Table), 1994 WL
83270, *1 (8th Cir. 1994).  Dismissing these claims sua sponte, would
serve judicial economy in addition to saving time and money for all of
the litigants, both Plaintiff and Defendants.

complaint and after some of the Defendants filed a motion to dismiss, Plaintiff filed an amended complaint (doc. 25), which is the operative complaint.   The Amended Complaint named seven defendants.  They were the Pennsylvania Department of Corrections ("DOC"), SCI-Chester, DOC Secretary Jeffrey Beard, Superintendent Martin Dragovich, Corrections Officer Terra, collectively the "DOC Defendants."  The amended complaint also named Dr. Benjamin Van Robinson, who was a medical doctor at SCI-Chester, who was apparently employed by the other non-DOC defendant, Prison Health Services, Inc. ("PHS"), which is a contractor apparently used by DOC to provide some medical care to inmates.  The court will refer to Dr. Van Robinson and PHS collectively as the "Medical Defendants."

Presently before the Court for disposition is the DOC Defendants' motion to dismiss.

*Standard of Review*

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is required to accept as true all allegations made in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the plaintiff.  Blaw Knox Retirement Income Plan v. White Consolidated Industries, Inc., 998 F.2d 1185, 1188 (3d Cir. 1993).  The issue is not whether the plaintiff will ultimately prevail, but rather whether he can support his claim by proving

3

*any* set of facts that would entitle him to relief.  Hishon v.
King & Spaulding, 467 U.S. 69 (1984).  Dismissal is appropriate
"only if it is clear that no relief could be granted under any
set of facts that could be proven consistent with the
allegations."  Port Authority of New York and New Jersey v.
Arcadian Corp., 189 F.3d 305, 311 (3d Cir. 1999).  It is the
defendant who bears the burden of establishing that the complaint
fails to state a claim upon which relief can be granted.  Gould
Electronics, Inc. v. United States, 220 F.3d 169, 178 (3d Cir.
2000).

   *Discussion*

   Prior to arriving at SCI-Chester, Plaintiff had suffered a
ruptured Achilles tendon.  Doc. 25 at ¶ 15. Although at a
previous state prison Plaintiff had been given a bottom bunk
designation, at a subsequent prison this designation was either
not given or was revoked.  Upon arriving at SCI-Chester,
Plaintiff was given bottom bunk status for one day but thereafter
he was made to sleep in the top bunk.  Doc. 25 at ¶¶ 24-28.
Plaintiff alleges that Defendant Terra was the one responsible
for changing Plaintiff's bottom bunk status without
justification.  Id., at ¶¶ 27 & 29.  Despite his complaints and
requests for bottom bunk status, Plaintiff was not given bottom
bunk status.  Doc. 25 at ¶ 32.  In addition, the Defendants

allegedly refused to provide any physical therapy to Plaintiff for his injured tendon.

On January 27, 2004, when Plaintiff attempted to climb to his top level bunk, he asserts that he suffered severe pain and weakness in his ankle as a result of the ruptured tendon, causing Plaintiff to lose his footing and fall, striking his head on the bottom bunk, rendering him unconscious and causing injuries to his head, neck and back.  Doc. 25 at ¶¶ 36-39.  Plaintiff's cell mate called for assistance but none was provided until one half hour later when medical assistance was finally provided.  Doc. 25 at ¶¶ 40-42.

Plaintiff further claims that on January 29, 2004, Defendant Van Robinson placed a "medical hold" on Plaintiff which precluded Plaintiff from being paroled and Dr. Van Robinson allegedly told Plaintiff that the medical hold would not be lifted until Plaintiff signed a waiver of liability form.  Doc. 25 at ¶¶ 46-50.  Under duress, Plaintiff finally signed the waiver of liability form on September 12, 2004 and Plaintiff was paroled from SCI-Chester on September 13, 2004.  Doc. 25 at ¶¶ 51-52.

Plaintiff also alleges that all of the foregoing was accomplished, in part, due to a practice, policy or custom that was either adopted or ratified by the DOC Defendants (especially, Defendants Beard and Dragovich) as well as by the Medical Defendants.  Doc. 25 at ¶¶ 53-57.

Plaintiff divides his complaint into five counts.  They are as follows.  In Count I, Plaintiff alleges that all of the Defendants were negligent in failing to assign him to a bottom bunk, failing to attend to and treat Plaintiff when he fell from the top bunk, and failing to assure he receive adequate rehabilitative therapy.  Doc. 25 at ¶¶ 58-60.  Count II alleges an Eighth Amendment violation for those same actions or failures to act. Doc. 25 at ¶ 66.  What Count III alleges is not clear. Count III alleges a violation of Plaintiff's due process rights under both the Fifth and Fourteenth Amendments.  Doc. 25 at p. 21.  Plaintiff alleges it is a "due process" violation to force him to sign a waiver of liability by placing him on a medical hold, which would allegedly prevent him from being paroled, and by informing him that he would not be taken off the medical hold until he signed the waiver of liability.  The complaint is not clear as to whether Plaintiff is mounting a procedural due process claim, or a substantive due process claim.  <u>Compare</u> Doc. 25 at ¶¶ 82-83 (claiming Plaintiff has a liberty interest in not being forced to sign a waiver of liability by having his parole held up until he signed the waiver, which appears to be a procedural due process claim) <u>with</u> ¶ 90 (alleging that the conduct of the Defendants "shocks the conscience," which appears to be a substantive due process claim).  Plaintiff's brief in opposition, however, clarifies that Plaintiff is making a

substantive due process claim.  Doc. 32 at 22 (setting forth

issue in the subheading as "WHETHER PLAINTIFF HAS A COGNIZABLE

CLAIM FOR VIOLATION OF HIS SUBSTANTIVE DUE PROCESS RIGHTS FOR

PLACING HIM ON A 'MEDICAL HOLD'?").[2]

    Count IV, like Count III, is somewhat confusing.  Plaintiff

claims that his right of access to the courts and his equal

---

[2]  Even in the brief in opposition, Plaintiff's arguments are not
clear.  Plaintiff insists that it "is well-settled law that a person
has a liberty interest in being paroled and such interest is protected
by the substantive due process requirements of the Fourteenth
Amendment" citing in support thereof to Morrissey v. Brewer, 408 U.S.
471 (1972).  Doc. 25 at 22.  In fact however, it is well settled law
that a prisoner has no liberty interest in being paroled.  White v.
Grace, 2005 WL 1653436, *2 (M.D. Pa. July 5, 2005)("Moreover, it is
well-settled that parole is not a protected liberty interest in
Pennsylvania.").  See also Burkett v. Love, 89 F.3d 135, 139 (3d Cir.
1996)("Reider was correct in its conclusion that no liberty interest
is created by the expectation of parole.").  Morrissey is a procedural
due process case that addresses the issue of whether after having been
paroled, a paroled individual has a liberty interest in remaining on
parole which cannot be taken away without notice and an opportunity to
be heard prior to revoking parole. See, e.g., Ingraham v. Wright, 430
U.S. 651, 690 n.6 (1977)(White, J., dissenting)("In support of its
policy considerations, the only cases from this Court cited by the
majority are Morrissey v. Brewer, 408 U.S. 471 (1972), and Meachum v.
Fano, 427 U.S. 215 (1976), both cases involving prisoners' rights to
procedural due process."); Henderson v. Simms, 223 F.3d 267, 274 (4th
Cir. 2000) ("In Morrissey v. Brewer, 408 U.S. 471(1972), the Supreme
Court addressed the question of whether the requirements of procedural
due process applied to parole revocations.").  Morrissey emphatically
does not establish a liberty interest in getting paroled.  Plaintiff
goes to great lengths to try to establish some liberty interest in
getting parole in order to support his substantive due process claim,
when he need not do so because the existence of a liberty interest is
not required in order to make out a substantive due process claim.
Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991) (under one theory of
substantive due process "it is not required that the plaintiffs prove
a violation of a specific liberty or property interest"); Folk v.
Atty. Gen. of Commonwealth of Pa., 425 F.Supp.2d 663, 671 (W.D. Pa.
2006) ("Whereas procedural due process concerns deprivations of
liberty interests and assures that such deprivations are not
accomplished unless attended by certain procedures, substantive due
process does not require a liberty interest in order to be
violated.").

protection rights were violated by Dr. Van Robinson when he coerced Plaintiff into signing the waiver of liability, which was allegedly done pursuant to a policy that was established by PHS and the DOC defendants.  Finally, Count V alleges a Fourteenth Amendment claim of Substantive Due Process violation in that forcing Plaintiff to climb to the top bunk shocks the conscience, as does permitting him to lie on the ground for thirty minutes after the fall without any assistance and refusing to supply him with adequate facilities.

The only relief sought is money damages plus costs, attorney fees and expenses.

**Eleventh Amendment Immunity**

The DOC Defendants point out that DOC and SCI-Chester, as an organ of the DOC, are entitled to Eleventh Amendment immunity as to all claims.  Doc. 27 at 4-6.  Plaintiff concedes the correctness of this contention.  Doc. 32 at 5 ("Plaintiff would concede that the claims against these parties [i.e., DOC and SCI-Chester] are barred to the extent that he has no claims for prospective, injunctive relief, as he is no longer an inmate of the Pennsylvania Department of Corrections.").  Hence, all claims, against DOC and SCI-Chester must be dismissed based on their Eleventh Amendment immunity.

This dismissal includes the supplemental state law claims of negligence against the DOC and SCI-Chester and Beard and

Dragovich[3] (but only in their official capacities) contained in Count I of the amended complaint even though these Defendants might have been able to be sued in state court for these same claims given the state statutory waiver of sovereign immunity found at 42 Pa.C.S.A. § 8521 *et seq.*  See, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117-122 (1984) (holding that Eleventh Amendment immunity applies to state law claims over which federal court exercises pendent jurisdiction [i.e., the former term for supplemental claim jurisdiction]).  No exceptions to the Eleventh Amendment immunity are applicable here. Pennsylvania has not consented to be sued in federal court. Wilson v. Vaughn,  No.  93-C.V.-6020, 1996 WL 426538, *1 n.2 (E.D.Pa. July 30, 1996)(citing, 42 Pa. Con. Stat. Ann. §8521(b)). This court is not aware of any statute by which Congress has expressly abrogated Pennsylvania's Eleventh Amendment immunity from being sued in Federal Court for state law claims.  See, e.g., Roberson v. McShan, 2005 WL 2673516, *1 (5th Cir. Oct. 20, 2005)("The Eleventh Amendment also bars state law claims in federal court.  Congress did not abrogate Eleventh Amendment immunity by granting federal courts supplemental jurisdiction over state law claims")(citations omitted); Mascheroni v. Board

---

[3]  Plaintiff did not name Defendant Terra in the heading of Count 1.  Doc. 25 at 14.  However, to the extent that Plaintiff intended to name Defendant Terra in Count I, the reasoning about official capacity suits being barred under the Eleventh Amendment applies equally to him.

of Regents of University of California, 28 F.3d 1554, 1560 (10th
Cir. July 11, 1994) ("Inasmuch as Congress has not abrogated the
States' Eleventh Amendment immunity against state law claims
brought in federal court . . . ."), *abrogation on other grounds
recognized in*, Boyler v. Cordant Technologies, Inc., 316 F.3d
1137, 1140 (10th Cir. 2003).  Hence, the Eleventh Amendment bars
not only all federal law claims in federal court but all state
law claims as well against DOC, SCI-Chester and the individual
DOC Defendants in their official capacities.

DOC defendants contend that Plaintiff has sued Defendants
Beard and Dragovich only in their official capacity because the
amended complaint did not specify that the Plaintiff was suing
them in their individual capacities.  Doc. 27 at 4-5.  Plaintiff
contests this and asserts that he intended to sue Beard and
Dragovich in their individual capacities.  Some courts apply a
presumption that, when not specified, a suit against an employee
of the state is an official capacity suit only.[4]  However,
because the failure to specify a capacity is easily remedied by
Plaintiff's amending the complaint[5] to make explicit that the

---

[4] See, e.g., Ham v. Pennington County Bd. of Com'rs, 158
Fed.Appx. 761, 762 (8th Cir. 2005)("if complaint does not specifically
name public official in individual capacity, it is presumed he is sued
only in official capacity)(citing Artis v. Francis Howell N. Band
Booster Ass'n, Inc., 161 F.3d 1178, 1182 (8th Cir. 1998)).

[5] It is expected that the Plaintiff will seek leave to amend his
amended complaint to specify the capacities in which the Defendants
are sued.

individual DOC Defendants are sued in their individual capacities, Defendants Beard and Dragovich will not be dismissed from this suit at this time based on the Defendants' official capacity argument.

### 2. Sovereign Immunity and Negligence claims

Next, the DOC Defendants claim that Plaintiff's state law negligence claims against them, contained in Count I, are barred based on the state law doctrine of sovereign immunity.  Because this court has already decided that state law claims of negligence against DOC and SCI-Chester and against the individual DOC defendants in their official capacities are barred by Eleventh Amendment immunity, the court construes this argument to be that the state law doctrine of sovereign immunity bars also the state law claims of negligence against Defendants Beard, Dragovich and Terra in their individual capacities.

In the statute codifying sovereign immunity, it provides generally that the Commonwealth of Pennsylvania and its agencies/officers are immune from suit in state court except in limited circumstances.  42 Pa.C.S.A. § 8522.  Recognizing the existence of exceptions, the DOC Defendants argue somewhat conclusorily that "[c]ertainly none of the statutory exceptions to sovereign immunity are applicable to the instant facts."  Doc. 27 at 6.  In response, Plaintiff argues that Section 8522 does

provide a specific exception for sovereign immunity for medical

negligence [sic[6]] as follows:

> **(3) Care, custody, or control of personal property.**--The care custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency.

Doc. 32 at 8. Plaintiff makes a colorable argument that because

of the lack of a ladder leading to the top bunk, there was a

dangerous condition of the bunks, which is property in the care,

custody or control of the Defendants, who are "Commonwealth

parties" within the meaning of the statute, and therefore, his

case falls within this exception.  Because it is not clear that

"no relief could be granted under any set of facts that could be

proven consistent with the allegations," Arcadian Corp., 189

F.3d at 311, Count I will not be dismissed against Defendants

Beard, Dragovich or Terra, for failure to state a claim.  At

least, Defendants have not carried their burden to establish that

the complaint fails to state a claim upon which relief can be

granted with their sovereign immunity argument.  Gould

Electronics, Inc. v. United States, 220 F.3d 169, 178 (3d Cir.

---

[6]   Section 8522 also provides an exception for "(2) **Medical-professional liability.--**Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel[,]" and although the Plaintiff references the exception for "medical negligence," he only quotes and argues the personal property exception.

2000).  Thus, Count I's negligence claims against Defendants
Beard, Dragovich and Terra, in their individual capacities should
not be dismissed.

### Respondeat Superior

Next, the DOC defendants argue that Plaintiff seeks to hold
Defendants Beard and Dragovich liable based solely upon
respondeat superior.

The general rule in Section 1983 cases, such as this one, is
that a "defendant in a civil rights action must have personal
involvement in the alleged wrongs; liability cannot be predicated
solely on the operation of respondeat superior."  Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Respondeat
superior is a doctrine of vicarious liability based upon public
policy [and] the notion that the person who benefits by the acts
of the servant must pay for wrongs committed by the servant; the
one held liable as master need not be at fault in any way."
McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979).
Hence, the only way a defendant can be liable under Section 1983
is based upon facts showing that the defendant was personally
involved in depriving the civil rights of the plaintiff, i.e.,
personally engaged in wrongdoing.  However, contrary to
Defendants' contentions, a reading of the amended complaint makes
clear that Plaintiff is not seeking to hold the Defendants liable
based merely on their relationship to supervisees who engaged in

wrongdoing.  Rather, he seeks to hold them liable for their own
wrongdoing, to wit, their alleged promulgation of policies that
had the effect of denying Plaintiff a bottom bunk, and denying
him adequate medical treatment and of placing him on medical
hold.  Contrary to Defendants' contention, such promulgation of
policies which cause constitutional violations can serve as a
basis for Section 1983 liability.  See, e.g., Natale v. Camden
County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003).
Hence, the claims against Defendants Beard and Dragovich will not
be dismissed on the grounds that the complaint alleges merely
respondeat superior liability, when, in fact, the complaint does
not.

**Eighth Amendment Claims**[7]

     In Count II of the amended complaint, Plaintiff makes an
Eighth Amendment claim for deliberate indifference.  In cases
involving the denial of medical care or denying medically
necessary devices/accommodations, to prove the subjective
component of an Eighth Amendment claim, a plaintiff must prove
that the defendants acted with deliberate indifference.  Estelle,

---

     [7] Technically, the Eighth Amendment applies to the states through
the Fourteenth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 101-02
(1976) (citing Robinson v. California, 370 U.S. 660 (1962)).  The
standards of the Eighth Amendment barring the federal government from
inflicting cruel and unusual punishments are the standards applicable
to the States through incorporation by the Fourteenth Amendment's due
process clause.  See Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir.
1981)(citing Robinson v. California).  With this understanding the
court will simply refer to the Eighth Amendment in its discussion.

429 U.S. 97 (1976).  The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment."  Estelle, 429 U.S. at 104 (internal quotations omitted).  The Court explained that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In addition, a "serious medical need," within the meaning of Estelle, has been explained by the Court of Appeals for the Third Circuit as follows:

> A medical need is "serious," in satisfaction of the second prong of the *Estelle* test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir.1981); *accord Laaman v. Helgemoe, 437 F*.Supp. 269, 311 (D.N.H.1977). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. For instance, *Estelle* makes clear that if "unnecessary and wanton infliction of pain," 429 U.S. at 103, results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment. *See id.* at 105. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious.

Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987).

In their motion to dismiss, the DOC Defendants contend that
the facts alleged by the complaint fail to state a claim of
deliberate indifference.  This court disagrees.  At this stage of
the suit, Plaintiff has sufficiently alleged that he suffered
from a serious medical need, i.e., ruptured tendon, which had
been diagnosed by a doctor.  He further alleged that all of the
Defendants knew or were deliberately indifferent to his medical
needs or promulgated policies that they knew would result in the
denial of treatment for his medical needs.  This is sufficient at
this stage in light of the liberal notice pleading standards of
the Federal Rules.

The DOC Defendants do raise one other argument that needs to
be addressed.  They claim that in light of the holding of Durmer
v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993), because Plaintiff
was being attended to by Dr. Van Robinson, the non-medical
defendants, i.e., Beard, Dragovich and Terra cannot be liable for
deliberate indifference.

Durmer v. O'Carroll held that "[t]he only allegation against
either of these two [prison official] defendants was that they
failed to respond to letters Durmer sent to them explaining his
predicament.  Neither of these defendants, however, is a
physician, and neither can be considered deliberately indifferent

16

simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." (footnoted omitted).   Defendants cite to <u>Durmer</u> as if whenever there is a physician provided, all non-physician employees are thereby shielded from all liability.   See Doc. 27 at 12.   However, <u>Durmer</u> is not so broad and also was a case addressing a summary judgment motion, unlike here where we are addressing a motion to dismiss, with its substantially different standard of review.   As clarified in <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004), <u>Durmer</u> is not so broad.   <u>Spruill</u> held that

> absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official like Gooler will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

<u>Spruill</u>, 372 F.3d at 236.   Here, a liberal reading of the complaint permits the inference that Dr. Van Robinson was not treating Plaintiff and that the other non-physician Defendants knew of this.   At the least, because it is not clear that "no relief could be granted under any set of facts that could be proven consistent with the allegations," <u>Arcadian Corp.</u>, 189 F.3d at 311, Plaintiff's Eighth Amendment claims contained in Count II should not be dismissed as against Defendants Beard, Dragovich and Terra, in their individual capacities.

**Substantive Due Process claim of coerced waiver**

In Count III, Plaintiff raises a substantive due process claim based on requiring him to sign the waiver of liability in order for him to be able to be considered for parole.  Defendants argue that Plaintiff's substantive due process claim fails to state a claim because there were no allegations of personal knowledge or active participation by the DOC individual defendants. Doc. 27 at 12. This argument fails to acknowledge that the complaint states that the "Defendants [plural] required him to sign a waiver of his rights to sue SCI-Chester and the other Defendants for their causing his fall on January 27, 2004, prior to recommending him for parole."  Doc. 25 at ¶ 83.  It also ignores the fact that the amended complaint alleged that there was a policy "in place that the State Correctional Institute of Chester whereby the physician would require Plaintiff DAVIS to sign said release.  Said custom was either adopted and/or specifically ratified by Defendants . . . Jeffrey A. Beard, . . . Martin L. Dragovich . . . ."  Doc. 25 at ¶ 53.  Thus, the factual premise of the Defendants' argument is inaccurate.

Defendants also appear to argue that because Plaintiff has no right to parole, he cannot successfully mount a substantive due process violation for their alleged actions in attempting to coerce him into signing a waiver of liability by threatening to continue to prevent his consideration for parole until he signed.

However, as explained above in footnote 2, Plaintiff need not
have any legal entitlement or liberty interest in parole in order
to successfully mount a substantive due process violation.  All
that needs to be alleged are actions that shock the judicial
conscience.  Coercing a prisoner to give up his right to sue in
exchange for the prison authorities' permitting Plaintiff to be
considered for parole is sufficient to shock this court's
conscience. Hence, Plaintiff's substantive due process claim
contained in Count III should not be dismissed.

**Plaintiff's Denial of Access to Courts claim**

In Count IV, Plaintiff makes a denial of access to courts
claim under the Fifth and Fourteenth Amendments.  Plaintiff
claims that his right of access to the courts was denied when the
Defendants allegedly coerced him into signing the waiver of
liability.  However, as Defendants point out, this fails to state
a claim upon which relief can be granted.  The court finds that
the case of Christopher v. Harbury, 536 U.S. 403 (2002), requires
dismissal of this claim.

In Christopher, a non-citizen husband of an American wife
was detained in a foreign country by CIA-employed foreign army
officers who eventually killed him.  Prior to his death, the wife
had tried to obtain information about her husband, however, the
State Department and other governmental officials stated to her
that they would investigate.  Nevertheless, these governmental

19

officials kept information from her and made misrepresentations that she alleged prevented her from obtaining information that would have enabled her to file a suit to prevent her husband's death. She alleged that the officials' conduct interfered with her right of access to the courts.  The District Court dismissed the claim.  The Court of Appeals reversed and the Supreme Court, in turn, reversed the Appeals Court and emphasized that in order to plead an adequate denial of access to courts claim the plaintiff must plead the existence of an injury, i.e., the loss of a non-frivolous lawsuit.  Accordingly, the high Court reversed the Appeals Court and in effect, affirmed the District Court's order of dismissal for failure to state a claim.

The Supreme Court declared that the "very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong  . . . .  the right [of access claim] is ancillary to the underlying claim, without which the plaintiff cannot have suffered injury by being shut out of court." Christopher, 536 U.S. at 414-15.  Therefore, "[i]t follows that the underlying cause of action . . . is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the claim."  Id. at 415. In addition, the court explained that as part of the pleading requirement to demonstrate actual injury caused by the official

actions, the plaintiff must plead that she has actually lost the opportunity to litigate that which she desired to litigate in the suit which was blocked by the official action.  The Court explained that "the complaint must identify a remedy that may be awarded as recompense [for the blocked suit] but not otherwise available in some suit that may yet be brought."  Id.   In other words, if the claims in the blocked suit may yet be brought, there is no sense in litigating an access to courts claim because no actual injury was suffered if the claims in the blocked suit could still be brought.  As the Supreme Court put it so succinctly, "[t]here is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial of access element."  Id.

     Plaintiff's complaint fails under Christopher because he has not identified any lost ability to bring any suit to court by the alleged forcing of him to sign the waiver of liability.  To the extent that he wishes to sue the Defendants for their alleged lack of treating him and/or their negligence in doing so, that is precisely what he is doing in this suit.  The Defendants have not raised the waiver of liability as a defense nor even if they were to do so, it would not necessarily be effective if indeed it was coerced.  See, e.g., Harmer v. Adkins, 1994 WL 132907, *4 (N.D. Ind. March 22, 1994) ("a release or waiver of liability which has

been executed under duress or coercion may not be enforceable as a release or waiver"). Hence, Plaintiff has failed to state a claim of denial of access to courts.[8]

Plaintiff does make an argument that his "actual injury" as required to make out a denial of access to courts claims was his being denied his procedural due process rights.  Doc. 32 at 26. First, the "actual injury" must be some lost ability to litigate as is made clear by Christopher, not just some denial of or injury to any constitutional right.  Other "injuries" to other interests may be addressable by the Constitution, but they are not addressable under the rubric of a denial of access to courts.

Even if an injury other than a lost opportunity to litigate could satisfy the injury requirement of a denial of access to courts claim, Plaintiff fails to have identified any.  Plaintiff alleges only two procedural due process injuries.  The first is as follows: "the Defendants deprived the Defendant [sic] of his liberty interest in parole by requiring him to sign the waiver of liability before they would release the 'medical hold' . . . ." Doc. 32 at 25.  Because he has no liberty interest in parole, see footnote 2, supra, the actions of the Defendants did not deprive him of a liberty interest.

---

[8]  Given that under the appropriate standard governing a denial of access to courts claim, Plaintiff fails to state a claim, the court need not address in depth the controversy between the parties as to whether this claim arises under the Fifth Amendment or the Fourteenth Amendment.

The second argument Plaintiff makes is that these same actions of the Defendants deprived him of a liberty interest in having a hearing before the parole board. Doc. 32 at 26 ("As long as the Plaintiff was on 'medical held' he could not have a hearing before the Parole Board to determine whether or not he should be paroled.  The effective denial of his right to a parole hearing, even though eligible, is a serious denial of his right to due process.").  If there is no liberty interest in parole itself, then a fortiori, there is no liberty interest in having a hearing conducted to be considered for parole. See, e.g., Preston v. Hughes, 178 F.3d 1295, 1999 WL 107970, *1 (6th Cir. 1999)(unpublished opinion)("Because Preston has no substantive liberty interest in parole, he cannot challenge procedures [or lack thereof] used to deny him parole."), cert. denied, 528 U.S. 906 (1999); McGrath v. Johnson, 67 F.Supp.2d 499, 515 n.12 (E.D. Pa. 1999)(the "prisoner cannot contest the unconstitutionality of procedural devices [or lack thereof] attendant to parole decision because [the] prisoner had no liberty interest in obtaining parole under Pennsylvania law.").  The Supreme Court has observed that "[a] liberty interest is of course a substantive [in contrast to a procedural] interest of an individual;  it cannot be the right to demand needless formality.  Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate

claim of entitlement. . . .  The State may choose to require procedures for reasons other than protection against deprivation of substantive  rights, of course, but in making that choice the State does not create an independent substantive right." Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) (internal quotations, citations and footnotes omitted).  See also United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981)("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.")(quoting Slotnick v. Staviskey, 560 F.2d 31, 34 (1st Cir. 1977), cert. denied,  434 U.S. 1077 (1978)); Shango v. Jurich, 681 F.2d 1091, 1101-02 (7th Cir. 1982) ("[A] state created procedural right is not itself a liberty interest.... States may decide to engage in such proceedings, but the due process clause does not compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at stake."); Hayes v. Muller, No. 96-3420, 1996 WL 583180, *7 (E.D. Pa.  Oct. 10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures.").  Having been deprived of no opportunity to litigate nor even of a liberty interest (assuming such an injury/loss counts in this particular analysis), Plaintiff has

suffered no injury for purposes of a denial of access to courts claim.

However, Plaintiff also alleges that these actions of the Defendants denied him equal protection of the laws. Defendants' single sentence attack on the equal protection claim, complaining that "there is no allegation as to how or when a violation of the right occurred," Doc. 27, at 14, fails to carry their burden to demonstrate that "no relief could be granted under any set of facts that could be proven consistent with the allegations." Arcadian Corp., 189 F.3d at 311.

### Substantive Due Process Claim of Medical Denials

Plaintiff's last claim is contained in Count V, wherein he alleges that actions of the Defendants in refusing to give him a bottom bunk, refusing him physical therapy and in allowing him to lie on the ground for 30 minutes after his fall violates substantive due process. Doc. 25 at ¶ 104. Defendants point out that this claim is barred by the doctrine of Albright v. Oliver, 510 U.S. 266, 271-272 (1994). This court agrees.

As has been observed, the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Albright v. Oliver, 510 U.S. 266, 271-272 (1994)(plurality opinion). As a result of inadequate guideposts, the court has limited the availability of

25

claims under substantive due process to those which are not covered by the legal tests and standards under other amendments. County of Sacramento v. Lewis, 523 U.S. 833 (1998).  The Supreme Court has described this limitation on substantive due process claims as follows:

> *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision and not under the rubric of substantive due process.

County of Sacramento, 523 U.S. at 843.  Essentially, these holdings stand for the proposition that if a given factual situation is addressed by the amendment, then that amendment's standard applies irrespective of whether the amendment itself applies, as in the case of federal government actors, or whether the amendment's standard as incorporated into the Fourteenth Amendment's substantive due process clause applies, as in the case of state government actors.

All three of Plaintiff's claims, i.e., failure to grant lower bunk bed status, failure to provide physical therapy and delaying  to provide emergency assistance for thirty minutes, are specifically covered under the standards of the Eighth Amendment. Hence, they are not also cognizable under the more malleable substantive due process standard of 'shocks the conscience".

Plaintiff argues that he can plead the substantive due process claim in the alternative to an Eighth Amendment claim

pursuant to Fed.R.Civ.P. 8(e)(2).  We disagree.  There is no sustainable substantive due process claim in the alternative to a claim governed under the Eighth Amendment standards pursuant to Albright and its progeny.  Simply put, Count II (Eighth Amendment standard) and Count V (Substantive due process standard) are duplicative and Count V is unnecessary and redundant and should be dismissed as such. In other words, the substantive due process claim is, and can only be, that the standards under the Eighth Amendment were violated by the Defendants' actions.  Under Albright and its progeny, there is no additional or alternative claim that the Defendants' actions at issue in Count V, which are the same actions at issue in Count II, shock the conscience.[9]

III. CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the

---

[9]    In light of the instant recommendation, should the district court adopt this Report and Recommendation, the only claims remaining would be: Count I's negligence claims against the DOC defendants and the Medical Defendants in their individual capacities; Count II's Eighth Amendment claims against these same defendants; Count III's substantive due process claims against them; and, finally, Count IV's equal protection claim against them.

objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                              Respectfully submitted,

                              /s/ Amy Reynolds Hay
                              AMY REYNOLDS HAY
                              United States Magistrate Judge

Dated:    5 September, 2006

cc:  The Honorable Arthur J. Schwab
     United States District Judge

     Arthur L. Bloom
     Michael V. Worgul
     Arthur Bloom & Associates
     310 Grant Street
     Suite 530
     Pittsburgh, PA 15219

     Ernest D. Preate, Jr.
     The Law Office of Attorney Ernest D. Preate, Jr.
     507 Linden Street, Suite 600
     Scranton, PA 18503

     Christian D. Bareford
     Mary Lynch Friedline
     Office of Attorney General
     Fifth Floor, Manor Complex
     564 Forbes Avenue
     Pittsburgh, PA 15219

     A. Tracey Campbell
     White & Williams
     1235 Westlakes Drive
     Suite 310, One Westlakes
     Berwyn, PA 19312-2416